Peter S. Hicks, OSB # 933057 *(Lead Counsel)*
E-mail:  peter.hicks@jordanramis.com
JORDAN RAMIS PC
Attorneys at Law
360 SW Bond St., Ste. 510
Bend, OR 97702
Telephone:  (541) 550-7900

Lawrence W. Erwin, OSB #730850
E-mail:  lwerwin@lwerwin.com
221 NW Lafayette Ave.
Bend, OR 97703
Telephone:  (541) 317-0520

        Attorneys for Defendants

## UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

## EUGENE DIVISION

| | |
|---|---|
| CYNTHIA HIGGINS WALSH, an individual,<br><br>        Plaintiff,<br><br>    v.<br><br>BEND STORAGE & TRANSFER, INC., et al.,<br><br>        Defendants. | Case No. 6:16-cv-02172-JR<br><br>Defendants Bend Storage & Transfer, Inc.'s, James L. Lynch's, and Nancy Lynch's Reply to Plaintiff's Memorandum in Opposition to Defendants' Motion for Summary Judgment<br><br>(Request For Oral Argument) |

Defendants Bend Storage & Transfer, Inc. ("BST") and Jim Lynch and Nancy Lynch

submit this Reply in support of their Motion for Partial Summary Judgment.

### Motion 1: Plaintiff's State-Law Claims Are Untimely

Plaintiff asserts that the timeliness of her state-law claims is governed by the EEOC

timeline, rather than the BOLI 90-day letter she received, citing *EEOC v. Thompson*, 2003 WL

Page 1 - DEFENDANTS' REPLY TO PLAINTIFF'S MEMORANDUM IN OPPOSITION TO
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

2353805 (D. Or. July 15, 2003).   In making this argument, Plaintiff ignores more recent case law stating "a plaintiff's claims under § 659A were time-barred when filed more than 90 days after the mailing of the BOLI letter but less than 90 days after receiving an EEOC letter." *Sharer v. Oregon*, 481 F. Supp. 2d 1156, 1164 (D. Or. 2007) (citing *Snook v. Rabold*, No. CV 06–849–MO, 2006 WL 2934274 (D. Or. Oct. 12, 2006), and *Chestnut v. Fred Meyer Jewelry, Inc.*, No. Civ. 02–3088–CO, 2004 WL 1900556 (D. Or. Aug. 24, 2004); *see also Romero-Manzano v. Carlton Plants, LLC,* 2016 WL 4473435 (D. Or. Aug. 24, 2016).

Plaintiff alternatively argues that her state-law claims should be equitably tolled.  In support of this argument Plaintiff cites a case where courts held statutes of limitations were equitably tolled where the plaintiff filed in the wrong court and where there was confusion in the law about what the correct court was. *Valenzuela v. Kraft, Inc.*, 801 F.2d 1170, 1175 (9th Cir. 1986), opinion amended on denial of reh'g, 815 F.2d 570 (9th Cir. 1987).  Additionally, Plaintiff cites *Nelmida v. Shelly Eurocars, Inc.*, 112 F.3d 380 (9th Cir. 1997).  In *Nelmida*, the Court declined to employ equitable tolling where the post office attempted to deliver the 90-day letter from the EEOC but the plaintiff was not home to receive the letter and the plaintiff did not pick up the letter at the post office. *Id.* at 384.  The Court said that equitable tolling should be used "sparingly." *Id.*  Additionally, in *Scholar v. Pacific Bell*, 936 F.2d 264 (9th Cir. 1992) in the Court did not apply equitable tolling where the plaintiff's daughter signed for the 90-day letter.

Plaintiff presents no evidence here that would indicate that equitable tolling *might* apply nor does Plaintiff explain why she did not timely file her Complaint.  Plaintiff does not assert that she was confused about the wording of the 90-day notice.  She does not assert that she did not receive the 90-day notice.  She does not assert that attempted to file her Complaint earlier or in a different venue.

Page 2 - DEFENDANTS' REPLY TO PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

In summary, the more-recent case law cited by Defendants controls and Plaintiff's state-law claims that were included in her first BOLI claim are untimely and must be dismissed.[1] This includes the allegations in paragraphs 12 through 31 of the Amended Complaint.

Additionally, as discussed in Reply in Support of Motion 4 *below*, to the extent Plaintiff suffered an adverse employment action in 2016, she did not actually seek rehire in 2016. Accordingly, Plaintiff's state-law claims should be dismissed entirely.

**Motion 2: Plaintiff is not disabled now, was not disabled at any relevant time, and was not regarded as disabled in violation of the ADAAA.**

Plaintiff's Opposition presents no evidence that she is disabled or was disabled at the time of any alleged adverse employment action.  Instead, Plaintiff tries to shift the focus to Defendants and rely on legal conclusions in her Amended Complaint.  The only evidence Plaintiff presenter regarding Plaintiff's alleged disability is Plaintiff's own testimony.  This testimony does not indicate that any major life activity is or was hindered by her shoulder injury. Plaintiff's descriptions of the alleged injuries indicate that she was in pain at the time the injuries occurred, but do not indicate that there was continued pain or interference with life activities that was ongoing.  In other words, Plaintiff's injury was both transitory and minor and did not limit her ability to perform any major life activity as compared to most people in the general

---

[1] Plaintiff asserts in footnote 2 that Exhibits 12 and 13 to Defendants' Motion and references thereto should be stricken.  Defendants cite to BOLI's determination for the purposes of showing that BOLI investigated the same allegations and dismissed those allegations more than 90 days before Plaintiff filed suit.  The exhibits are not used for hearsay purposes, but rather to show that the BOLI claim included the same issues as the Complaint and the date the BOLI claim was dismissed.  *See Oberg v. Honda Motor Co*., 316 Or. 263, 269, 851 P.2d 1084 (1993), *rev'd on other grounds,* 512 U.S. 415, 114 S.Ct. 2331, 129 L.Ed.2d 336 (1994) (distinguished in *Sleigh v. Jenny Craig*, 161 Or. App. 262, 267 n 3, 984 P.2d 891 (1999)).

population. Because Plaintiff does not present evidence that would allow a jury to conclude that she met any definition of actual disability or being perceived as disabled.

A. **Plaintiff does not have "a physical or mental impairment that substantially limits one or more of the major life activities of the individual." 42 USC §12102(1)(A).**

The totality of the evidence presented by plaintiff of her disability is as follows: Twice she acutely hurt her shoulder while at work. She did not seek any treatment after the first instance. She did not present any evidence on ongoing impairment following that incident. After the second instance, Plaintiff was only seen by one doctor, one time, in January 2015, for her shoulder injury. Ex. 9, 173:14-17; 176:7-11; 181:2-5. Plaintiff was diagnosed with bursitis and instructed to rest her shoulder for a week. Ex. 9, 175:24-176:7. Plaintiff alleges that she had been cleared to work by her doctor in March 2015, approximately two months after she sought treatment for her shoulder injury.[2] Amended Complaint, Dkt. 18, ¶ 25. Plaintiff treated herself for her shoulder injury with at-home physical therapy. Ex. 9, 233:21-234:4. Plaintiff did not testify that she is still doing physical therapy at home, she did testify that her shoulder is "better." Ex. 9, 234:3-4. Plaintiff testified that her current problems with her shoulder are: "If I do any repetitive action, hard physical labor, it does cause me physical pain at night. I can do it, I can still physically do it, but I cannot do it without being pain-free." Ex. 9, 234:7-10.

A physical impairment includes "Any physiological disorder or condition, cosmetic disfigurement, or anatomical loss affecting one or more body systems, such as neurological, musculoskeletal, special sense organs, respiratory (including speech organs), cardiovascular, reproductive, digestive, genitourinary, immune, circulatory, hemic, lymphatic, skin, and

_____

[2] Plaintiff had other health issues after her January 2015 shoulder injury before she returned to work in March 2015, which she, apparently, does not allege constitute a disability for purposes of this claim.

Page 4 - DEFENDANTS' REPLY TO PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

endocrine." 29 CFR §1630.2(h)(1).  As an initial matter, Plaintiff does not even identify what physiological condition she has or provide evidence of any medical diagnosis.

While the ADAAA did expand the definition of disability, Plaintiff still must put forth some evidence of that disability.  Judge Mossman recently interpreted the ADAAA consistent with the Fourth Circuit's interpretation regarding temporary injuries in *Summers v. Altarum Inst., Corp.*, 740 F.3d 325 (4th Cir. 2014).  *Werner v. Sturgeon Elec. Co., Inc.*, No. 3:16-CV-01334-MO, 2017 WL 3473179, at *6 (D. Or. Aug. 11, 2017).  While the *Summers* court determined that the ADAAA covers temporarily disabled employees, it only covers those employees while they are temporarily disabled.  "Prohibiting employers from discriminating against temporarily disabled employees will burden employers only as long as the disability endures. Temporary disabilities require only temporary accommodations."  *Summers*, 740 F.3d at 332.  Thus, Plaintiff must present some evidence that she was disabled at the time of the alleged adverse employment action(s) in order to be considered actually disabled for purposes of the ADAAA.  Plaintiff has not done so.

In addition to Plaintiff's vague description of her impairment, Plaintiff does not identify how whatever condition she has substantially affects a major life activity.  "An impairment is a disability within the meaning of this section if it substantially limits the ability of an individual to perform a major life activity *as compared to most people in the general population*. An impairment need not prevent, or significantly or severely restrict, the individual from performing a major life activity in order to be considered substantially limiting. *Nonetheless, not every impairment will constitute a disability within the meaning of this section*."  29 CFR § 1630.2(j)(1)(ii) (emphasis added).  The ADAAA requires "Consideration of facts such as condition, manner, or duration may include, among other things, consideration of the

Page 5 - DEFENDANTS' REPLY TO PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

difficulty, effort, or time required to perform a major life activity; pain experienced when performing a major life activity; the length of time a major life activity can be performed; and/or the way an impairment affects the operation of a major bodily function."    29 CFR § 1630.2(j)(4).

Plaintiff does not identify what major life activity is interfered with or how her pain associated with physical labor compares to the pain that most people in the general population feel after physical labor. Plaintiff does not indicate how the amount or duration of pain she feels (or ever felt) impacted any major life activity.

Plaintiff alleges that her testimony is enough to demonstrate a material question of fact as to her disability, even where there is no medical evidence of an impairment.  However, this testimony, as described above, does not indicate there is an impairment or that plaintiff's shoulder condition affects her life "*as compared to most people in the general population*."  29 CFR § 1630.2(j)(1)(ii).  Moreover, in the cases Plaintiff cites, there was other evidence which tended to show an impairment beyond the testimony and allegations of the plaintiff.  In *Scott*, the plaintiff had provided his employer with a "Self-identification of Handicap" form and had told many other employees about his artificial hip.  *Scott v. Mabus*, 618 F. App'x 897, 900 (9th Cir. 2015).  Here, in contract, Plaintiff relies on her own conclusory allegations in the Complaint. Additionally, in *James*, the plaintiff "submitted more than just conclusory declarations. Plaintiff's declaration describes in detail the ways in which dyslexia limits his ability to read and write, as well as the ways he has attempted to compensate for his disability. Plaintiff testified in his deposition about his disability and its impact on his life. He also testified about telling his supervisors and coworkers in an effort to obtain help."  *James v. Oregon Sandblasting & Coating, Inc.,* 2016 WL 7107227, at *6 (D. Or. Dec. 4, 2016).  In contrast, Plaintiff has only

Page 6 - DEFENDANTS' REPLY TO PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

described that she experiences pain at night after "repetitive action, hard physical labor." Ex. 9, 234:7-8.

Here, the *evidence* presented by Plaintiff does not demonstrate that she has an impairment that substantially limits a major life activity now or that she had such an impairment at the time of the alleged discriminatory actions. Accordingly, a jury could not determine that Plaintiff was actually disabled at the time of any alleged adverse employment action.

### B.  Plaintiff was not perceived as disabled.

Plaintiff alleges that even if she was not disabled, she was perceived as having a disability. Plaintiff does not allege or present any statements made by anyone at BST indicating that she was perceived as being disabled or connecting her lack of work in 2015 to her alleged disability.

However, even if Plaintiff was perceived as having a disability, if that perceived disability was both transitory (lasting or expected to last for six months or less) and minor, then Plaintiff cannot state a claim for disability discrimination. Plaintiff's descriptions of the incidents do not indicate that the injuries were perceived as not transitory and not minor, or that they were not transitory or not minor.

In sum, Plaintiff's alleged injuries were minor, not unlike the joint pain felt by most people in the general population on occasion, and were transitory, because they did not last more than six months. Further, Plaintiff does not present any evidence that she was perceived as having a disability that was not transitory and minor. Accordingly, Plaintiff cannot state a claim under the ADA.

Page 7 - DEFENDANTS' REPLY TO PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

### C. Plaintiff cannot state a claim under OLADD.

Plaintiff supports ORS 659A.104(3) in support of her claim. Yet, again, Plaintiff does not present any evidence of a major life activity that has been substantially limited. Accordingly, like her federal claim, plaintiff's state-law claim for disability discrimination fails as a matter of law because Plaintiff cannot meet her burden on summary judgment to submit evidence that presents a question of fact for the jury.

### Motion 3: Plaintiff is not entitled to reinstatement or reemployment.

As demonstrated in Defendant's Motion, BST employed 20 or fewer *workers* at each relevant time. The right of reinstatement under Oregon law does not apply to "[a] worker whose employer employs 20 or fewer workers *at the time of the worker's injury* and *at the time of the worker's demand for reinstatement*." ORS 659A.043(2)(b)(D) (emphasis added). For purposes of this statute, a "worker" is defined as "any person, including a minor whether lawfully or unlawfully employed, who engages to furnish services for a remuneration, subject to the direction and control of an employer. . .." ORS 656.005(30).

In contrast, for purposes of Title VII, courts use the "payroll method" to determine the number of *employees* an employer had in each week of the year in which the violation occurred and the prior calendar year. 42 USC § 2000e(b).[3]

Here, Defendants presented evidence of the number of *workers* it had on the potential dates of each of Plaintiff's alleged injuries and alleged demands for reinstatement. Because there

---

[3] In other Oregon statutes, the definition of the kind of employer the law applies to is similar to Title VII, for examples for purposes of the Oregon Military Family Leave Act an "employer" is: "A person, firm, corporation, partnership, legal representative or other business entity that engages in any business, industry, profession or activity in this state and that employs 25 or more persons in the State of Oregon for each working day during each of 20 or more calendar workweeks in the year in which leave is taken under ORS 659A.093 or the year immediately preceding the year in which the leave is to be taken." ORS 659A.090(2)(a).

were not more than 20 workers on any of those days, there could not have been more than 20 workers *at the times* relevant under ORS 659A.043(2)(b)(D). Accordingly, as a matter of law, Plaintiff was not entitled to reinstatement under ORS 659A.043.

Plaintiff's contentions that the handwritten summaries of Ms. Clancy are unreliable is not supported by the record. Defendants do not rely solely on Ms. Clancy's summaries. Defendants also included the documents relied on by Ms. Clancy in creating the handwritten summaries. These were documents, timecards and labor receipts filled out by the workers themselves, are the most accurate indication of the number of workers each day, as opposed to payroll records called in by Ms. Clancy. Plaintiff's response to Defendants' (withdrawn) Motion for Summary Judgement is inapposite, because Ms. Clancy used a different methodology to count workers for purposes of this motion and attached all supporting documents to her declaration. Moreover, as described above, Ms. Clancy did not use the "payroll method" for this Motion, because ORS 659A.043(2)(b)(D) does not call for the payroll method to determine the number of *workers* at *the time* of the alleged injury and request for reinstatement.

Plaintiff's Opposition to Defendant's Motion for Summary Judgment is the first time Plaintiff has asserted a right to reemployment under ORS 659A.046(7), so Defendants respond to the claim for the first time in this Reply. First, Plaintiff cannot state a claim under ORS 659A.046 because Plaintiff is not "disabled from performing the duties of the worker's former regular employment." ORS 659A.043 applies where the worker has sustained a compensable injury and "is not disabled from performing the duties of [the worker's former position]." Thus, ORS 659A.043 and ORS 659A.046 are mutually exclusive. A worker cannot be both disabled from performing her former position and NOT disabled from performing her former position. Plaintiff alleges that in March 2015 she was "released to work with no restrictions."

Page 9 - DEFENDANTS' REPLY TO PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Accordingly, Plaintiff cannot allege that she was disabled from performing the duties of her former regular employment such that ORS 659A.046 would apply and she would be entitled to reemployment.

Plaintiff is not entitled to reinstatement because BST in not a qualifying employer under that statute and Plaintiff is not entitled to reemployment because she is not "disabled from performing the duties of the worker's former regular employment." Accordingly, Plaintiff's eighth claim for relief should be dismissed.

**Motion 4: Plaintiff's failure to follow express directions to reapply demonstrates that she did not seek reinstatement and did not suffer an adverse employment action.**

Plaintiff testified in her deposition that when she alleges she sought reinstatement, she introduced herself to Karlton Petteway in the morning and that she and Mr. Petteway had agreed that she would come back that afternoon to discuss her coming back to work at BST, after he had spoken with people in the office and confirmed that what she said was true. Ex. 9, p. 22 to 25 (Deposition of Higgins-Walsh, 219:11 to 222:9). "He told me that he would talk to Nancy and come back later that afternoon and him and I would talk and see if he could get me on the dispatch list for the next day and see what we could do about getting me back to work." *Id.* at 222:3-7. Yet, despite her agreement with Mr. Petteway, Plaintiff did not come back that afternoon to talk to Mr. Petteway or anyone else at BST. Now Plaintiff insists it was incumbent on BST to seek Plaintiff out, despite her indication through her conduct that she was not interested in returning to work.

Plaintiff was given a specific instruction and agreed on the next step for her to come back to work—she was to come back that afternoon—and she did not complete that specific instruction or give any other indication to BST that she was still interested in returning to work.

Page 10 - DEFENDANTS' REPLY TO PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Defendants are not asserting that Plaintiff failed to follow an unwritten policy or procedure. Defendants assert that Plaintiff's own testimony indicates that she did not follow the plan agreed upon between herself and Mr. Petteway on the day she requested reinstatement.

Defendants have not found 9th Circuit case law on this issue, but the 8th Circuit has several cases discussing what applying for a job actually means.  Under 8th Circuit case law, "an employee who does not formally apply must make 'every reasonable attempt to convey his or her interest in the job to the employer before he or she may prevail on a discrimination claim." *EEOC v. Audrian Health Care, Inc.*, 756 F.3d 1083, 1087 (8th Cir. 2014) (quotation marks omitted) (citing *Chambers v. Wynne Sch. Dist.,* 909 F.2d 1214, 1217 (8th Cir.1 990) and *Lockridge v. Bd. of Trs., of the Univ. of Ark.,* 315 F.3d 1005, 1011 (8th Cir. 2003) (en banc)).  In *Audrian*, Lunceford was a nurse in the PACU.  While working at the PACU, Lunceford learned of open positions in the CCU and the OR.  Lunceford requested to be transferred to the CCU in writing and that transfer was approved.  After requesting that transfer, Lunceford spoke to his supervisor about being transferred to the OR.  The supervisor responded: "I hate to discriminate against you because you're a man, but the doctors want more female nurses in the OR."  756 F.3d at 1085.   Lunceford later made a claim to the EEOC that he was denied the OR transfer because of his gender.

The 8th Circuit determined that no adverse employment action had occurred because Lunceford had not actually applied for the OR position.  His conversation with the supervisor, without requesting the transfer, was not sufficiently clear because Lunceford did not make every reasonable attempt to convey his interest in the position.  *Id*. at 1087-88.

Here, Plaintiff and Mr. Petteway made a simple plan for Plaintiff's return to work—she needed to return that afternoon.  Plaintiff did not do that.  Thus, Plaintiff did not make every

reasonable attempt to convey her interest in returning to work at BST.  To the contrary, Plaintiff

never returned to talk to Mr. Petteway or anyone else at BST, and thus did not apply for re-hire.

On these undisputed facts, a jury could not find that Plaintiff suffered an adverse employment

action when she was not rehired in April 2016. Accordingly, Plaintiff is entitled to summary

judgment on that issue as to each of Plaintiff's claims.

     **Motion 5: Neither James Lynch nor Nancy Lynch could have "aided and abetted"**

**BST.**

     Plaintiff acknowledges that this court's case law establishes that "virtually no

manager/owner of a small business or closely held corporation can ever be liable for aiding and

abetting the corporation."  Opposition at p. 30.  Plaintiff makes no attempt to distinguish that

case law as applied to Nancy Lynch.

     With regard to Jim Lynch, Plaintiff asserts that Mr. Lynch's behavior in disciplining her

and alleging deciding that she was not qualified for the warehouse manager position are evidence

that Mr. Lynch aided and abetted BST.  However, this very evidence shows that the type of

activities Mr. Lynch was involved with at BST were that of management and consistent with his

role as a former owner.  In other words, Mr. Lynch's role at BST was limited, because he was

semi-retired, but that role was exercising "executive authority," which is consistent with being a

legally equivalent to the employer.  *White v. Amedisys Holding, LLC*, No. 3:12-cv-01773-ST,

2012 WL 7037317, at *5 (D. Or. Dec. 18, 2012), *report and recommendation adopted*, No. 3:12-

cv-01773-ST, 2013 WL 489674 (D. Or. Feb. 7, 2013).  Additionally, the fact that Mr. Lynch was

no longer an owner does not mean that he cannot be legally equivalent to the business, as was the

case in *Hannan v. Bus. Journal Publications, Inc.*, No. 3:14-CV-00831-SB, 2015 WL 9265959,

at *18 (D. Or. Oct. 2, 2015), *report and recommendation adopted*, No. 3:14-CV-00831-SB, 2015

Page 12 - DEFENDANTS' REPLY TO PLAINTIFF'S MEMORANDUM IN OPPOSITION TO
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

WL 7720496 (D. Or. Nov. 30, 2015), where the individual defendant was an employee, the publisher of the Portland Business Journal.

Thus the undisputed evidence demonstrates that neither Jim Lynch nor Nancy Lynch could have aided and abetted BST and therefore cannot be held personally liable under ORS 659A.130(1)(g).

## CONCLUSION

As discussed above and in Defendants' Motion, Defendants are entitled to partial summary judgment. On each of the issues presented, Plaintiff has failed to present evidence that creates a material issue of fact for a jury to decide.

Dated this 16th day of March, 2018.

JORDAN RAMIS PC

By: /s/ Peter Hicks
Peter Hicks, OSB # 933057
360 SW Bond St., Ste. 510
Bend, OR 97702
peter.hicks@jordanramis.com
Telephone: (541) 797-2079
Facsimile: (503) 598-7373
Attorneys for Defendants Bend Storage
& Transfer, Inc.

CERTIFICATE OF SERVICE

This motion complies with the applicable word-count limitation under LR 7-2(b),

26-3(b), 54-1(c), or 54-3(e) because it contains 6,080 words, including headings, footnotes, and

quotations, but excluding the caption, table of contents, table of cases and authorities, signature

block, exhibits, and any certificates of counsel.

I hereby certify that on the date shown below, I served a true and correct copy of the

foregoing DEFENDANTS' REPLY TO PLAINTIFF'S MEMORANDUM IN OPPOSITION TO

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT on:

Lawrence W. Erwin
Law Office of Lawrence W. Erwin
221 NW Lafayette Ave.
Bend, OR 97703
Phone:  (541) 317-0520
E-mail: lwerwin@lwerwin.com
         Co-Counsel for Defendants

Craig A. Crispin
Crispin Employment Lawyers
1834 SW 58th Ave Ste 200
Portland OR  97221
Facsimile:  (503) 293-5766
E-mail:  crispin@employmentlaw-nw.com
         Attorneys for Plaintiff Cynthia Higgins-Walsh

by electronic transmission.

DATED:  March 16, 2018.

JORDAN RAMIS PC


/s/ Peter Hicks
Peter Hicks, OSB # 933057
Attorneys for Defendants
Bend Storage & Transfer, Inc.


CERTIFICATE OF SERVICE                          53817-75905 2950405_1\MP/3/16/2018